Timothy L. **PENROD** and Sharon
D. Penrod, Plaintiffs,

v.

The **BANK OF NEW YORK MELLON**
f/k/a The Bank of New York as Trustee for the Benefit of the Certificateholders of CWABS, Inc. Asset Backed Certificates Series 2007–9, Defendant.

Civil Action No. 4:10–4012.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 15, 2011.

Robert Chamless Lane, Middagh & Lane, PLLC, Sugar Land, TX, for Plaintiffs.

Michael J. McKleroy, Jr., Walter Lewis Edmond McInnis, C. Charles Townsend, Akerman Senterfitt, Dallas, TX, for Defendant.

### *MEMORANDUM AND ORDER*

NANCY F. ATLAS, District Judge.

In this foreclosure suit, Defendant Bank of New York Mellon ("BONY") has filed a

Motion for Summary Judgment · [Doc. # 22] ("Motion"). Plaintiffs Timothy and Sharon Penrod have responded [Doc. # 31] ("Response"), and BONY has replied [Doc. # 32] ("Reply"). The motion is ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted.**

## I. *BACKGROUND*

Plaintiffs originally filed this dispute in state court.[1] The parties' dispute centers on a Texas Home Equity Note that placed a lien on the Penrods' property. Defendant BONY claims the authority to foreclose the lien. BONY's mortgage servicer is Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans, LP ("BANA"). BANA is not named as a Defendant in this suit. The Penrods argue that BONY is not the owner, holder, or holder in due course of the Note.

On April 3, 2007, Timothy Penrod applied for the loan at issue,[2] with an addendum on April 10, 2007, that added Sharon Penrod.[3] On April 10, 2007, the Penrods

signed a notice informing them of their rights under the Texas Home Equity Amendment to the Texas Constitution.[4] On April 19, 2007, an appraiser valued the property at $110,000.[5] On May 1, 2007, the Penrods executed a Deed of Trust granting a lien against the property,[6] which secured repayment of a Note executed by Timothy Penrod promising to repay $88,000, plus interest, to Countrywide Home Loans.[7] The loan closed on May 2, 2007.[8]

In 2008, the Penrods defaulted on their loan obligations.[9] Throughout 2008 they received multiple notices from Countrywide Home Loans, each sent by certified mail, informing them that their loan was in default.[10]

Effective November 24, 2009, the Note and Deed of Trust were assigned to Defendant BONY.[11] On December 4, 2009, the law firm representing BONY's loan servicer notified the Penrods that it was initiating legal proceedings to collect on the debt associated with the Deed of Trust.[12] On May 17, 2010, BONY filed suit in state

---

1. Original Petition, No. 10–DCV–183924, 240th Judicial District of Fort Bend County (Exhibit 1 to Notice of Removal [Doc. # 1]) ("Petition").

2. Uniform Residential Loan Application (Exhibit E to Motion), at 3.

3. Addendum to Loan Application Texas (a)(6) Equity Loan (Exhibit F to Motion).

4. Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution (Exhibit G to Motion).

5. Uniform Residential Appraisal Report (Exhibit H to Motion), at 6.

6. Texas Home Equity Security Instrument (First Lien) (Exhibit B to Motion) ("Deed of Trust"). The Deed of Trust is dated May 1, 2007, but was executed on May 2, 2007. *Id.* at 13. It names Mortgage Electronic Registration Systems, Inc. ("MERS") as a nominee

for Countrywide Home Loans and its successors and assigns, and states that MERS is the beneficiary under the Deed of Trust. *Id.* at 2.

7. Texas Home Equity Note (Fixed Rate—First Lien) (Exhibit C to Motion) ("Note").

8. HUD–1 Settlement Statement (Exhibit I to Motion).

9. Payment History (Exhibit O to Motion).

10. Default Notices dated Feb. 4, 2008, Mar. 7, 2008, Apr. 2, 2008, June 2, 2008, Sept. 2, 2008 (Exhibit P to Motion).

11. Assignment of Note and Deed of Trust (Exhibit D to Motion).

12. Letter to Penrods from Barrett Daffin Frappier Turner & Engel, L.L.P., dated Dec. 4, 2009 (Exhibit Q to Motion).

court seeking an order authorizing foreclosure and sale of the property.[13]

The Penrods have made several challenges to the validity of the debt. On June 29, 2010, counsel for the Penrods sent to "Bank of America" a request for validation of debt pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g.[14] On June 30, 2010, Plaintiffs' counsel sent to BONY a Notice of Request to Cure detailing four alleged violations under the Texas Home Equity Amendment and demanding that all violations be cured within sixty days.[15] On July 1, 2010, Plaintiffs' counsel sent to "Bank of America" a letter alleging multiple statutory violations and invoking the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2605(a).[16]

Plaintiffs filed their Original Petition in state court on September 10, 2010, seeking, among other things, a judgment that Defendant is not entitled to foreclose on the property. BONY removed to this Court on October 21, 2010.[17]

## II. *SUMMARY JUDGMENT STANDARD*

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[18] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [19]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." [20] The moving party, however, need not negate the elements of the non-movant's case.[21] The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." [22]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[23] "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is

13. In re: Order for Foreclosure Concerning Timothy L. Penrod and Sharon D. Penrod, Cause No. 10–DCV–180902, District Court of Ft. Bend County, Texas, 268th Judicial District (Exhibit B to Petition).

14. Letter to Bank of America from J. Caruthers, dated June 29, 1010 (Exhibit C to Petition).

15. Notice of Request to Cure (Exhibit A to Response).

16. Letter to Bank of America from G. Gore, dated July 1, 2010 (Exhibit D to Petition).

17. Notice of Removal [Doc. # 1].

18. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *see also Baton Rouge Oil*

*and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir.2002).

19. FED.R.CIV.P. 56(a); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir.2008).

20. *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005).

21. *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005).

22. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995) (internal citations and quotations omitted).

23. *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir.2001) (internal citation omitted).

such that a reasonable jury could return a verdict for the nonmoving party." [24]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[25] However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.' " [26] The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[27] Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[28] Instead, the non-moving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." [29] In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[30]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[31] A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[32]

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." [33]

### III. ANALYSIS

Plaintiffs bring claims for a declaratory judgment that Defendant BONY is not the owner or holder in due course of the Note, as well as claims for various violations of the Texas Home Equity Amendment, the Fair Debt Collection Practices Act, and the Real Estate Settlement Procedures Act, the Truth in Lending Act. BONY brings a counterclaim seeking declaratory judgment authorizing foreclosure.

---

**24.** *DIRECTV Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir.2005) (internal citations and quotation marks omitted).

**25.** *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412 (5th Cir. 2003).

**26.** *Alexander v. Eeds,* 392 F.3d 138, 142 (5th Cir.2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999)).

**27.** *See Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir. 2002).

**28.** *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir.2008).

**29.** *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,* 343 F.3d 401, 405 (5th Cir.2003) (citation and internal quotation marks omitted).

**30.** *Little,* 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

**31.** *See* FED.R.CIV.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.,* 230 F.3d 765, 776 (5th Cir.2000); *Hunter–Reed v. City of Houston,* 244 F.Supp.2d 733, 745 (S.D.Tex. 2003).

**32.** *See In re Hinsley,* 201 F.3d 638, 643 (5th Cir.2000).

**33.** *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003) (internal citations and quotations omitted).

### A. Plaintiffs' Declaratory Judgment Claim

The Penrods' petition asserts that Defendant BONY is not owner or holder in due course of the Note, and seeks a declaratory judgment so stating. Their summary judgment response makes no argument in support of their request for declaratory judgment, other than their arguments that BONY violated various provisions of the Texas Home Equity Amendment. These arguments are addressed separately below.

BONY has presented evidence that the Deed of Trust for the subject property named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and as nominee of the original lender and its successors and assigns.[34] The Deed of Trust, which explicitly invokes Texas law, further stated that MERS had the right to foreclose on or sell the property:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of these interests,

including, but not limited to, the right to foreclose *and sell* the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.[35]

This provision of the Deed of Trust expressly gave MERS authority to sell or transfer its rights and interests.[36] MERS's assignment of the Note and Deed of Trust to BONY fits within this authority.[37]

These documents establish BONY's right to foreclose on the subject property.[38] The Penrods' briefing does not argue to the contrary. Defendant's motion for summary judgment on Plaintiffs' declaratory judgment claim is granted. Plaintiffs' request for a permanent injunction, preventing BONY from attempting to foreclose upon the property,[39] is denied.

### B. State Constitutional Claims under the Texas Home Equity Amendment

Plaintiffs argue that the loan in question violated the Texas Home Equity Amendment to the Texas Constitution.[40] Plaintiffs identify four alleged violations: (1) the principal balance of loan was greater than

---

34. Deed of Trust (Exhibit B to Motion), at 2.

35. Deed of Trust (Exhibit B to Motion), at 3 (emphasis added); *id.* at 1 (Deed of Trust is entitled "TEXAS HOME EQUITY SECURITY INSTRUMENT" and states at the top of the first page that it secures an extension of credit under Section 50(a)(6), Article XVI, of the Texas Constitution). *See Richardson v. CitiMortgage, Inc.*, 2010 WL 4818556, at *5 (E.D.Tex. Nov.22, 2010) ("Under Texas law, where a deed of trust, as here, expressly provides for MERS to have the power of sale, then MERS has the power of sale."); *Santarose v. Aurora Bank FSB*, 2010 WL 2232819, at *5 (S.D.Tex. June 2, 2010).

36. Deed of Trust (Exhibit B to Motion), at 3. *See Richardson*, 2010 WL 4818556, at *5 (right to sell is right to transfer).

37. *See* Assignment of Note and Deed of Trust (Exhibit D to Motion) (MERS as assignor assigns the relevant Note and Deed of Trust to BONY, effective Nov. 24, 2009).

38. The Court need not and does not address the additional arguments in BONY's Motion regarding Chapter 51 of the Texas Property Code and physical possession of the Note. The Court notes, however, that BONY has presented evidence that the original Deed of Trust and Note are in the physical possession of BONY's attorneys. Affidavit of Walter McInnis (Exhibit R to Motion), at 1–2.

39. Petition, at 9, ¶ 19.

40. Tex Const., art. XVI, § 50(a)(6).

80% of the fair market value, violating Section 50(a)(6)(B); (2) the fees and charges on the loan exceeded 3% of the loan amount, violating Section 50(a)(6)(E); (3) the loan closed less than twelve days after the original loan application was submitted or after Plaintiffs received notice that the loan was governed by Section 50(a)(6), violating Section 50(a)(6)(M)(i); and (4) Plaintiffs did not receive a copy of final executed loan application, violating Section 50(a)(6)(Q)(v).

Plaintiffs argue that, because of these violations and because BONY did not adequately respond to its Notice of Request to Cure,[41] BONY has forfeited all principal and interest and they are entitled to have the Note declared void or paid pursuant to Section 50(a)(6)(Q)(x).[42] The Court now addresses each of the four alleged violations.

### 1. Eighty Percent Rule

The Penrods argue that their loan violated the "eighty percent rule" in the Texas Home Equity Amendment, which provides that the combined indebtedness secured by a homestead cannot exceed eighty percent of the homestead's fair market value.[43]

BONY argues that summary judgment is appropriate because the amount loaned to Plaintiffs did not exceed eighty percent of the property's fair market value. The Note and Deed of Trust state that the loan principal was $88,000. At closing, the Penrods signed an Acknowledgment that the property's fair market value was $110,000, which included the statement "Lender is relying on this written acknowledgment by me as to the fair market value of the Homestead Property as a condition of making the extension of credit and neither I nor Lender has any knowledge, or reason to believe, that the fair market value of the Homestead Property stated in this written acknowledgment is incorrect."[44] The Acknowledgment states that the valuation is from "an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Section(a)(6), Article XVI, Texas Constitution."[45] Eighty percent of $110,000 is $88,000.

Plaintiffs do not dispute that they signed the acknowledgment, but state that "Plaintiffs are not appraisers and have no specific knowledge regarding home valuations," and that their signed acknowledgment does not establish actual fair market value. They cite to a printout from the webpage

---

**41.** Notice of Request to Cure (Exhibit A to Response).

**42.** Section 50(a)(6)(Q)(x) provides: "except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit [under Section 50(a)(6) ] if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply ...". TEX. CONST., art. XVI, § 50(a)(6)(Q)(x).

**43.** Section 50(a)(6)(B) provides: "The homestead of a family, or of a single adult person,

shall be, and is hereby protected from forced sale, for the payment of all debts except for: ... an extension of credit that: ... is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made." TEX. CONST., art. XVI, § 50(a)(b)(B).

**44.** Acknowledgment as to Fair Market Value of Homestead Property (Exhibit J to Motion).

**45.** *Id. See* Uniform Residential Appraisal Report (Exhibit H to Motion), at 6 (appraised value of $110,000 assessed by Texas certified appraiser).

of the Fort Bend Central Appraisal District, which lists the property's 2007 market value as $91,780.[46] They argue that the two "competing documents" regarding the property's fair market value demonstrate the existence of a fact question.

■ The Texas Constitution does not support Plaintiffs' claim. Section 50(h) of Article XVI provides:

A lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:

(1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and

(2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.[47]

The Penrods have not proffered any evidence that the valuation was not supported by an adequate appraisal, as in Section 50(h)(1), nor that the lender had actual knowledge at the time that the $110,000 valuation was incorrect, as in Section 50(h)(2). Even if Plaintiffs' printout from the Fort Bend Central Appraisal District were properly authenticated, that information would be relevant to valuation for taxation purposes only. It does not establish market value.[48]

The Penrods have not demonstrated a genuine issue of material fact regarding a violation of the eighty percent rule. Summary judgment is granted for BONY.

## 2. Three Percent Rule

The Texas Constitution provides that an owner may not be required to pay loan fees "in addition to any interest ... that exceed, in the aggregate, three percent of the original principal amount of the extension of credit." [49]

■ Based upon the principal amount of $88,000 loaned to the Penrods, the maximum permissible fees were $2,640.00.[50] The Penrods claim that $6,789.50 in fees were charged. BONY argues that the $6,789.50 figure is incorrect because it includes a $4,400 loan discount fee, which is excluded by law,[51] and that the actual

---

**46.** Fort Bend Central Appraisal District printout (Exhibit C to Response). *See* Affidavit of Timothy Penrod (Exhibit B to Response). BONY challenges the printout from the Appraisal District's website as unauthenticated. Given the Court's holdings herein, the Court does not reach the authentication issue.

**47.** TEX. CONST., art. XVI, § 50(h).

**48.** *See Houston Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686–87 (Tex.Civ.App.-Hou. [14th Dist.] 1977, writ ref'd n.r.e.) ("[I]t is generally held that the value placed upon real property for the purposes of taxation by assessment without participation of the landowner is not evidence of its value for purposes other than taxation. Such testimony is hearsay and represents an opinion not subject to cross-examination. Exclusion of such testimony is also considered a rule of practicality, since tax assessments rarely reflect the

true market value.") (internal citations omitted).

**49.** Section 50(a)(6)(E) provides: "The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: ... an extension of credit that: ... does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit ...". TEX. CONST., art. XVI, § 50(a)(6)(E).

**50.** $88,000 × 0.03 = $2,640.

**51.** Motion, at 15 (citing 7 TEX. ADMIN. CODE § 153.5(3)).

amount of fees was $1,020.[52] Plaintiffs argue that the $4,400 loan discount fee is not properly excluded from the calculation because "there is and continues to be a fact question surrounding whether or not the fee actually 'bought down' Plaintiffs' interest rate." [53]

At closing, both Plaintiffs signed a Discount Point Acknowledgment which read:

I acknowledge that I am electing to pay discount point(s) in this extension of credit transaction in order to obtain a lower interest rate. I acknowledge that I could have obtained a loan with fewer or no discount point(s), but that the loan would have had a correspondingly higher interest rate. *I acknowledge that discount point(s) are "interest" under Texas law and that, accordingly, they are excluded from the 3% limit on fees [under Section 50(a)(6)(E) ].*[54]

This document, which the Penrods have admitted that they signed in order to induce the making of the loan,[55] demonstrates that the discount points are properly excluded from the three percent limit. Plaintiffs' arguments lack factual support and are insufficient to defeat summary judgment.[56]

### 3. Twelve–Day Rule

The "twelve-day rule" requires that a loan not be closed before "the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by [TEX. CONST., art. XVI, § 50(g) ]." [57]

The loan to the Penrods closed on May 2, 2007.[58] The parties agree that the Penrods applied for the loan on April 3, 2007. On April 10, 2007, Plaintiffs acknowledged receipt of the disclosures required by Section 50(g).[59] BONY therefore argues that, counting from the later date (*i.e.*, April 10, 2007), more than twelve days passed be-

---

**52.** BONY does not explain this figure except to say that it was the actual fee amount when the discount points are excluded. If 4,400 is subtracted from 6,789, the result is 2,389, not 1,020. The Court need not resolve this discrepancy since $2,389 is less than $2,640, the three percent limit.

**53.** Response, at 7 (arguing that BONY has failed to produce a Wholesale Price Sheet for the week of May 1, 2007, and Plaintiffs' credit report, which would "establish the best rate for which Plaintiffs originally qualified without the application of the supposed 'discount points' ").

**54.** Discount Point Acknowledgment (Exhibit K to Motion) (emphasis added).

**55.** Plaintiffs' Second Amended Responses to BONY's First Request for Admission, Interrogatories and Request for Production of Documents (Exhibit A to Reply), at 24, Nos. 83–85.

**56.** *See Am. Eagle Airlines,* 343 F.3d at 405 (nonmoving party must present specific facts which show the existence of a genuine issue concerning every essential component of its case); *Diamond Offshore,* 302 F.3d at 545 n. 13 (non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings).

**57.** Section 50(a)(6)(M)(i) provides, "The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: ... an extension of credit that: ... is closed not before ... the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section....". TEX. CONST., art. XVI, § 50(a)(6)(M)(i).

**58.** HUD–1 Settlement Statement (Exhibit I to Motion).

**59.** Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution (Exhibit G to Motion).

fore the May 2 closing and thus the twelve-day rule is satisfied.

Plaintiffs argue that summary judgment is inappropriate because BONY's own documents show that the *appraisal* was not signed and approved until April 19, 2007.[60] However, the date of appraisal or its disclosure to the borrower is irrelevant to the question before the Court. The twelve-day rule does not require disclosure of an appraisal report within the prescribed time frame, but rather requires the lender to provide the notice prescribed by Section 50(g). There is no question that the lender's notice was timely. Summary judgment is granted for BONY.

#### 4. Rule regarding Copies of Closing Documents

Section 50(a)(6)(Q)(v) of Article 16 of the Texas Constitution requires that the borrower receive a copy of all loan documents executed at closing.[61]

BONY presents a document, signed by the Penrods at closing, acknowledging receipt of all closing documents.[62] Plaintiffs, however, argue that summary judgment is inappropriate because "Plaintiffs do not have in their possession a copy of all the documents signed at closing and Defendant has not produced a copy of all the documents signed at closing, only the acknowledgment." [63]

Plaintiffs cannot defeat summary judgment with unsupported allegations that they did not receive the loan documents at closing.[64] Moreover, even if BONY now were to provide all documents, as apparently demanded by Plaintiffs, Plaintiffs fail to explain how such production would prove that copies of certain documents were or were not provided to Plaintiffs at closing. Rather, such proof is provided by the acknowledgment,[65] which Plaintiffs do not deny signing and upon which BONY is entitled to rely. Summary judgment is granted for Defendant.

### C. *Fair Debt Collections Practices Act*

Plaintiffs seek relief under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692g, on the grounds that BONY's "alleged servicer," BAC Home Loans, failed to provide validation as requested in Plaintiffs' letter of June 29, 2010.[66]

■ BAC Home Loans is not a defendant in this action, nor is its successor

---

**60.** Uniform Residential Appraisal Report (Exhibit H to Motion), at 6.

**61.** Section 50(a)(6)(Q)(v) provides: "The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: ... an extension of credit that: ... is made on the condition that: ... at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit ...". TEX. CONST. art. XVI, § 50(a)(6)(Q).

**62.** Receipt of Document Copies (Exhibit L to Motion) ("I acknowledge that I have received a copy of all the documents I signed at closing in connection with the extension of credit on my homestead property under Section 50(a)(6), Title XVI of the Texas Constitution ...").

**63.** Response, at 7–8.

**64.** *See, e.g., Diamond Offshore*, 302 F.3d at 545 n. 13 (non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings). Plaintiffs' Petition denies receipt of the final executed loan application at closing, Petition, at 6, but has offered no support for this allegation, and Plaintiffs signed a statement to the contrary. *See* Receipt of Document Copies (Exhibit L to Motion).

**65.** Exhibit L.

**66.** Petition, at 9–10, ¶¶ 39–41; Letter to Bank of America from J. Caruthers, dated June 29, 1010 (Exhibit C to Petition).

Bank of America, N.A. ("BANA").[67] Plaintiffs offer no evidence, and do not claim, that Defendant BONY violated the FDCPA.[68] Moreover, Plaintiffs do not allege that BONY somehow is liable for any alleged violations by BAC Home Loans. Plaintiffs' summary judgment response has abandoned the claim, offering no briefing on the subject.[69] A defendant may meet its summary judgment burden by pointing out the absence of evidence supporting Plaintiff's case,[70] as BONY has done here. Summary judgment is granted for Defendant.

### D. *Real Estate Settlement Procedures Act*

Plaintiffs allege that "Defendant's alleged servicer, BAC," is liable under Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), for its alleged failure to respond to Plaintiffs' Qualified Written Request within the statutory time frame.[71]

As stated above, BAC and its successor, BANA, are not parties to this lawsuit. Plaintiffs have not brought their RESPA claim against BONY. In addition, BONY seeks summary judgment on the claim, arguing that it cannot be held liable under RESPA because it was not the loan servicer. The statutory language clearly applies to loan servicers, not owners.[72]

Plaintiffs' summary judgment briefing makes no mention of RESPA and has abandoned the claim.[73] Moreover, Plaintiffs have failed even to allege that BONY is liable under RESPA. Summary judgment is granted for BONY on Plaintiffs' RESPA claim.

### E. *Truth in Lending Act*

Plaintiffs plead a cause of action under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g)(1)(C), as an alternative ground for relief, alleging that BONY failed to notify them in writing when their Note and Deed of Trust were transferred.[74]

---

**67.** BONY states that its mortgage servicer is Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans, LP ("BANA"). Motion, at 1.

**68.** *See* Petition, at 9–10, 41 ("By failing to provide the validation as requested in Plaintiffs' RVD, Defendant's alleged servicer, BAC, is now liable to Plaintiffs for statutory damages, costs and attorney fees.").

**69.** *See Vela v. City of Houston,* 276 F.3d 659, 678–79 (5th Cir.2001) (party abandoned defense by failing to sufficiently raise issue in district court).

**70.** *Duffy,* 44 F.3d at 312 (moving party may meet burden by pointing out absence of evidence supporting the nonmoving party's case).

**71.** Petition, at 10, ¶¶ 42–44; *see* Letter to Bank of America from G. Gore, dated July 1, 2010 (Exhibit D to Petition).

**72.** Section 2605(f) provides for damages from those parties who fail to comply with the

provisions of Section 2605. 12 U.S.C. § 2605(f). Section 2605(e) pertains to a "qualified written request" and places a duty on a "loan servicer" to respond to inquiries from a borrower who believes his or her account to be in error. *Id.* § 2605(e). *See, e.g., Wenglicki v. Tribeca Lending Corp.,* 2009 WL 2195221, at *4 (E.D.Pa.2009) (only loan servicers are required to respond to a qualified written request).

**73.** *See Vela,* 276 F.3d at 678–79.

**74.** Petition, at 10, ¶¶ 46–47. *See* 15 U.S.C. § 1641(g)(1)(C) ("In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including ... how to reach an agent or party having authority to act on behalf of the new creditor ...").

BONY moves for summary judgment, arguing there is no factual or legal basis to support the claim and asserting a defense under the statute of limitations. Plaintiffs' summary judgment briefing does not contest Defendant's arguments, and Plaintiffs are deemed to have abandoned their TILA claim.[75]

Summary judgment is granted for BONY on Plaintiffs' TILA claim.

### F. *Counterclaim*

BONY brings a counterclaim for declaratory judgment, seeking a judgment declaring the parties' rights and obligations with respect to the loan at issue. BONY seeks, among other relief, a judgment that it is entitled to a judgment for the foreclosure of the Deed of Trust.[76]

Plaintiffs' sole argument here is that BONY is not entitled to foreclosure because, as a result of BONY's failure to cure its violations of the Texas Home Equity Amendment, BONY "forfeited any and all interest in the note .... regardless of whether Defendant [BONY] owns the note or the deed of trust."[77] Given the Court's rejection of Plaintiffs' contentions that are the predicates for this claim, Plaintiffs' defense to BONY's claim for foreclosure fails as a matter of law.

BONY accordingly is entitled to foreclose upon the property. Summary judgment is granted for Defendant. Defendant must submit a proposed judgment on or before **Monday, November 28, 2011.**

### IV. *CONCLUSION*

For the foregoing reasons, it is hereby

**ORDERED** that BONY's Motion for Summary Judgment [Doc. # 22] is **GRANTED.** All Plaintiffs' claims are **DISMISSED.** Summary judgment is **GRANTED** as to Defendant's counterclaim. It is further

**ORDERED** that Defendant must submit a proposed judgment **on or before November 28, 2011.**

---

**75.** *See Vela,* 276 F.3d at 678–79.

**76.** Motion, at 23–24; Defendant The Bank of New York Mellon's Original Answer and Counterclaim [Doc. # 10], at 7–12.

**77.** Response, at 8.